HERBERT H. PAPE, INC., a Florida corporation, *Plaintiff in Error*, v. HENRY C. FINCH and MILLICENT M. FINCH, as partners doing business under the firm name of Broad Albin Storage Company, *Defendants in Error*.

136 So. 496.

Division A.

Opinion filed March 24, 1931.

On rehearing judgment affirmed July 9, 1931.

426

BROWN, J., concurs specially; ELLIS, J., dissents.

*Slapp, Gourley, Vining & Ward,* of Miami, for Plaintiff in Error;

*Worth W. Trammell* and *Loftin, Stokes & Calkins,* of Miami, for Defendants in Error.

ELLIS, J.—Herbert H. Pape, Inc., a Florida Corporation, commenced an action in the Circuit Court for Dade County against Henry C. Finch and Millicent M. Finch as partners doing business under the firm name of Broad Albin Storage Company.

The action was based upon a promissory note for the sum of seventeen thousand five hundred dollars payable on or before one year after date with interest at the rate of eight per cent. per annum from date, dated at Miami, Florida, on October 12, 1925, and was signed by Broad Albin Storage Company by Henry C. Finch, President, Millicent M. Finch, Secretary, and payable to the order of Herbert H. Pape, Inc. The word "seal" appears opposite the name Broad Albin Storage Company and that of Henry C.

Finch, President, but none after the name of Millicent M. Finch, Secretary.

The note contained clauses waiving demand, notice of non-payment and protest, an agreement to pay reasonable attorney's fees in the event of suit to collect it and that deferred interest should bear interest from maturity. The note was more than nine months over-due when the declaration was filed.

The declaration alleged that the defendants assumed to act in a corporate capacity in making the note without having been clothed with corporate existence and authority in the State of Florida; that the note was over-due and unpaid. The plaintiffs claimed damages.

A motion for compulsory amendment of the declaration was denied and a demurrer was overruled. The defendants then interposed three pleas to which the plaintiff demurred and interposed its motion to strike them. Both the demurrer and the motion to strike were overruled and the plaintiff announcing that it would not plead further but would stand on its demurrer the court entered judgment for the defendant.

The plaintiff seeks a reversal on writ of error.

The order denying the motion to strike and overruling the demurrer was error so the judgment was erroneous.

The first plea was bad because it was argumentative and because it tendered no issue. The declaration declared upon a promissory note executed by two persons assuming to act in a corporate capacity without having been authorized so to act in this State. The plea merely denied that they, the defendants, assuming to act in a corporate capacity without having been authorized so to act in this State executed the note. From which it was intended doubtless to infer that their act was no assumption (that is a taking unjustly) of corporate power but an exercise by them lawfully of the corporation's power to execute the note and that it was therefore the corporation's note and not theirs.

Pleading is a statement of fact and not a statement of argument. See 1 Chitty on Pleading (Ed. of 1809) 216, 517.

No issue was tendered by the plea by way of an averment of an issuable fact constituting a defense to the declaration. The second plea is amenable to the same objection. In one part it denies that the Broad Albin Storage Company was not clothed with corporate existence and authority in Florida and in the closing part of the sentence, consisting of ten lines, explains that the corporation is a duly organized and existing corporation under the laws of New York State and by the laws of that State authorized by its President and Secretary to execute and deliver the note, from which averments it is to be inferred that as the Corporation was organized and authorized to transact business in New York State under the laws of that sovereign power it was authorized through its President and Secretary to transact business in Florida. If the argument was good it would nevertheless not constitute a good plea because it should aver that the note was not the note of the defendants but the note of the corporation and the latter was authorized to do business in this State.

The third plea is very lengthy. It avers the organization of the "Broad Albin Storage Company" as a corporation under the laws of New York, attaches a certificate of the record of the incorporation, avers its transaction of business in New York, that it obtained from the Secretary of State of the State of Florida on March 19, 1926, five months and a half after the execution of the note by the defendants, a permit to transact business in this State under the statutes of this State, attached the permit as an exhibit to the plea, recited in detail the transaction out of which the action grew, averred it to be a real estate transaction in which the corporation acquired lands in Dade County and attached a copy of the deed of conveyance as an exhibit and averred that the note was executed to evidence the part of the purchase price of the land not paid in cash, averred

the execution of the note to be the corporation's act, and on the same day executed a mortgage to the plaintiffs upon the property conveyed to secure the payment of the note and averred that at the time of the transaction the Corporation was by the laws of New York authorized to receive from the plaintiff a conveyance of the property and to make and execute the notes and mortgage and that at the time the defendants were respectively President and Secretary of the Corporation and that in its behalf they executed the notes sued on. The plea closes with the averment that the purchase of the land and the execution of the notes and the mortgage constitute the only transaction of business in Florida by the corporation.

Stripped of all unnecessary averments, the plea merely amounts to an admission that the defendants executed the note sued upon while acting for a New York Corporation which at the time was not authorized to transact business in Florida, but that it was the only business transaction that it had in this State.

The doctrine is well settled in this State that a foreign corporation has no authority to transact business in this State before it complies with the requirements of the laws of this State and that when its stockholders or officers undertake to transact any business in this State in the name of a corporation not authorized under the laws of this State to transact business here they are held to individual liability as partners. It is not a question of the validity of the debt incurred, it is merely a question of the liability to which the officers of the corporation subject themselves in such transactions.

The judgment is reversed on the authority of Taylor v. Branham, 35 Fla. 297, 17 South. Rep. 552, 39 L. R. A. 362, 48 Am. St. Rep. 249.

Judgment reversed.

BUFORD, C.J., AND WHITFIELD AND DAVIS, J.J., concur.

TERRELL AND BROWN, J.J., dissent.

432

Per Curiam.—This case is before the Court on rehearing. In the original opinion written by Mr. Justice Ellis it was held that the doctrine is well settled in this State that a foreign corporation has no authority to transact business in this State before it complies with requirements of the laws of this State, and that when its stockholders or officers undertake to transact any business in this State in the name of a corporation not authorized under the laws of this State to transact business here they are held to be individually liable as partners; that it was not a question of the validity of the debt incurred, but was merely a question of the liability to which the officers of the corporation subject themselves in such transactions. On the authority of Taylor v. Branham, 35 Fla. 297, 17 So. 552, 39 L. R. A. 362, 48 Am. St. Rep. 249, the judgment of the court below was reversed by a majority of this Court.

On rehearing granted a majority of the Court have reached the conclusion that it is unnecessary to finally decide in this case whether or not the stockholders or officers of a foreign corporation may be held individually liable as partners when they undertake to transact business in this State in the name of such foreign corporation when it is not authorized under Florida laws to transact business here. That question will accordingly be left open for future consideration and determination in some appropriate case where such question is necessarily involved and required to be definitely decided.

In this case the declaration contained a single count. Herbert H. Pape, Inc. sued the Finches in an action at law, to recover from them individually, on a promissory note, dated October 12, 1925, whereby Broadalbin Storage Company, a New York Corporation, as maker, promised to pay to the order of Herbert H. Pape, Inc., $17,500.00 on or be-

fore one year after date, but failed to do so. A copy of the note was attached to the declaration.

This declaration alleges that:

"Henry C. Finch and Millicent M. Finch, individuals assuming to act in a corporate capacity in the State of Florida, under the name of Broadalbin Storage Company, without then having been clothed with corporate existence and authority in the State of Florida, assuming so to act as President and Secretary respectively thereof, did make, execute and deliver unto the Plaintiff their certain promissory note."

Defendants filed three pleas. The first and second pleas traverse specific allegations of the declaration. The third plea avers in substance that the Broadalbin Storage Corporation, a corporation, was organized in the State of New York, in conformity with the laws of that State, by persons resident and domiciled in that State; that all stockholders' and directors' meetings were held in that State; that the corporation engaged in business in that State several years before transacting in Florida the item of business which resulted in this suit; that the corporation purchased from plaintiff certain real estate in Dade County, Florida, and received a deed therefor from plaintiff; that to evidence a part of the unpaid purchase price of such lands the corporation executed and delivered to the plaintiff the note sued on, and also a mortgage upon the lands securing the notes; that at the time of the execution and delivery of the note and mortgage mentioned, defendants were President and Secretary, respectively, of Broadalbin Storage Company, a corporation under the laws of New York, and were acting for and on behalf of, and under authority from, such corporation; that said Broadalbin Storage Company, a corporation, had, since the execution and delivery of the note sued on, obtained a permit to transact business in the State of Florida.

Plaintiff demurred to each of the three pleas on the ground that each plea failed to set up any defense, was

434

duplicitous, vague, indefinite and uncertain, did not traverse any fact alleged in the declaration, and did not confess and avoid plaintiff's cause of action alleged in its declaration. A motion to strike each plea contained practically the same grounds as the demurrer.

The demurrer was over-ruled and the motion to strike was denied. Thereupon plaintiff announced that it would stand on its demurrer and motion to strike and suffer final judgment to be entered for defendants. Final judgment was accordingly entered for defendants and plaintiff took writ of error.

4. Plaintiff in error's contention is that inasmuch as Broadalbin Storage Company had not obtained a permit to transact business in the State of Florida at the time of the execution and delivery of the notes sued on, defendants Henry C. Finch and Millicent M. Finch, who executed the note in the name of Broadalbin Storage Company, by them as President and Secretary, respectively, became personally liable for the face of the note.

To sustain this contention, Section 6026 (4095) and Section 6029 (4098), Comp. Genl. Laws, 1927, are relied on.

Section 6026 C. G. L., referred to provides that:

"No foreign corporation shall transact business, or acquire, hold, or dispose of property in this State until it shall have filed in the office of the Secretary of State a duly authenticated copy of its Charter or Articles of Incorporation, and shall have received from him a permit to transact business in this State, etc." The statute makes it a misdemeanor for a corporation, and its officers and agents, to violate this prohibition.

The allegation of the declaration is that the two named defendants, Henry C. Finch and Millicent M. Finch, *individuals assuming to act in a corporate capacity* in the State of Florida, under the name of Broadalbin Storage Company, *without then having been clothed with corporate existence* and authority in the state of Florida, assuming

to so act as President and Secretary, respectively, thereof, *did make, execute and deliver unto the plaintiff their certain promissory note* which was sued on.

The principal plea demurred to alleged that the corporation purchased a piece of property in Florida, which under the laws of New York, said corporation was allowed to take and hold title to in its corporate capacity. This plea further shows that the purchase of said real estate, and the making, execution and delivery of said promissory note and mortgage, constituted the only transaction of business in Florida by said corporation; that the property so purchased is the only property which was ever owned by the corporation in Florida, throughout its existence. The plea also shows that the Broadalbin Storage Company, after it made the notes and mortgage on October 12, 1925, obtained from the Secretary of State on March 19, 1926, before the institution of the suit, a proper permit to do business in Florida as a foreign corporation.

Upon further consideration by the court, it appears that this plea presented a good defense and that the demurrer thereto was properly over-ruled.

A corporation lawfully organized in another American State, by persons resident in that State, when the organization is consummated in the State of incorporation, may lawfully transact in Florida business authorized by the corporate charter and the laws of the State of incorporation, *if not specifically prohibited by the laws of this State.* Duke vs. Taylor, 27 Fla. 64, 19 So. 192.

The statute seems to make a distinction between the transaction of business in Florida, without securing a foreign corporation permit, and the simple act of acquiring, holding and disposing of property in this State until such permit is procured.

This distinction is emphasized by a proviso added to original Section 6026 (4095) by Chapter 6876, Acts of 1915. Such proviso is to the effect that "no violation of

this law shall affect the title to property thus acquired, held or disposed of in violation of the provisions hereof.''

To the extent that this proviso to the statute is applicable, transactions within it appear to have been taken out of the rule which might otherwise apply. Therefore, while it continues to be a violation of the statute for an unlicensed corporation of another State to ''acquire, hold or dispose of'' property in this State, the *consequences* of the violation are not made the same as when a corporation transacts business in this state without securing the required permit to act in a corporate capacity in this jurisdiction.

It appears, therefore, that in its corporate capacity, a foreign corporation lawfully organized under the laws of another state, may actually take, subject to the specific penalties provided by law for a violation of the statute (Section 7449 C. G. L., 5321 R. G. S), valid title to property in Florida. This is so because the statute distinctly provides that no violation of the corporation law shall ''affect'' the title to property acquired by such foreign corporation.

If the Broadalbin Storage Company had power, in its *corporate* capacity to *take title* to Florida property, even though it was without a legal permit to otherwise exercise its corporate franchise in Florida, it would seem to follow that notes and mortgages executed by the corporation as a part of the transaction by which the title was acquired in such corporate capacity, might also be regarded as having been executed in a corporate capacity as a consideration for such title.

This brings the status of such notes and mortgages within the rule recognized in Duke v. Taylor, 27 Fla. 64, 19 So. 172, where it was declared that by comity the *corporate* status of a foreign corporation would be recognized in Florida in all cases where recognition *is not specifically prohibited by the laws of this State.*

The legislature originally raised a general prohibition

against corporate recognition of unlicensed foreign corporations by which not only the transaction of all corporate business but the acquisition, holding and disposition of property was made absolutely and without reservation unlawful. See Chapter 5717, Acts of 1907. But this general and rigid prohibition was modified and relaxed by Chapter 6876 Acts of 1915, in so far as the title to property acquired, held or disposed of in violation of the statute is concerned.

So the effect now is to extend a limited recognition to the *corporate character* of a duly organized foreign corporation when it takes title to property in Florida, even though such foreign corporation has not been domesticated in this State.

This recognition of the corporate character is to the extent of permitting the corporation to take valid title in its *corporate* capacity, and carries with it the recognition that notes and mortgages given by the corporation as a consideration for acquiring such corporate title, are corporate notes and mortgages and not the notes and mortgages of the individuals who assume to act for such unauthorized corporation in connection with the matter.

Therefore the plea showing that the note sued on was given as part of the purchase price for property purchased by an unauthorized foreign corporation in this State, must be regarded as having been given in the corporate capacity of the corporation and not as the individual obligation of the persons who assumed to execute the same as President and Secretary of such corporation.

Consequently the plea was good and the demurrer was properly over-ruled. The judgment must accordingly be affirmed on rehearing.

It is so ordered.

BUFORD, C.J., AND WHITFIELD, TERRELL AND DAVIS, J.J., concur.

BROWN, J., concurs specially.

ELLIS, J., dissents.

BROWN, J., Concurring specially:—The following origi-

nally prepared as a dissenting opinion, is now submitted as a special concurring opinion:

It seems to me, after a considerable study of this case, that the judgment of the court below should be affirmed. In the main, my views on the very important questions involved coincide with those expressed in an opinion which was submitted to the court in this case by Commissioner MATHEWS, and which reads in part as follows:

"Plaintiff's contention is that inasmuch as Broadalbin Storage Company had not obtained a permit to transact business in the State of Florida at the time of the execution and delivery of the note sued on, defendants Henry C. Finch and Millicent M. Finch, who executed the note in the name of Broadalbin Storage Company by them as its president and secretary, respectively, became personally liable for the face of the note."

A corporation lawfully organized in another American State, by persons resident in that State, when the organization is consummated in the State of incorporation, may lawfully transact in Florida business authorized by the corporate charter and the laws of the State of incorporation, provided it be not in contravention of our laws or of public policy. Duke v. Taylor, 37 Fla. 64, 19 So. 172, 31 L. R. A. 484, 53 Am. St. Rep. 232.

While it is true, as contended by plaintiff in error, that Section 6026 (4095) Compiled General Laws of Florida, 1927, provides that:

"No foreign corporation shall transact business, or acquire, hold or dispose of property in this State until it shall have filed in the office of the Secretary of State a duly authenticated copy of its charter or articles of incorporation, and shall have received from him a permit to transact business in this State;"

and makes it a misdemeanor for the corporation, and its officers and agents, to violate this prohibition, it is equally true that Section 6029 (4098) provides as follows:

"The failure of any such foreign corporation to comply with the provisions of this article shall not affect

the validity of any contract with such foreign corporation, but no action shall be maintained or recovery had in any of the courts of this State by any such corporation, or its successors or assigns, so long as such foreign corporation fails to comply with the provisions of this article.''

Chapter 5717, Acts of 1907, declared unenforceable the corporation contracts entered into in this State by a foreign corporation neglecting to file in the office of the Secretary of State a certified copy of its charter and to pay the State tax and other fees. The hardships resulting from Chapter 5717 brought about the enactment of Chapter 6875, Laws of Florida, 1915, Section 4, of which was amended by Chapter 6875, Laws of Florida, 1915, and the amended section now constitutes Section 6029, Compiled General Laws of Florida, 1927, quoted above. This section provides in no uncertain terms that the failure of a foreign corporation to file in the office of the Secretary of State a certified copy of its charter, etc., shall not affect the validity of any contract with such foreign corporation.

The fact that at the time the foreign corporation gave its promissory note to Herbert H. Pape, Inc., it had not filed in the office of the Secretary of State a certified copy of its charter and paid the state tax and other fees does not make its president and secretary who executed the note in its name, on its behalf, by its authority, and for a consideration moving exclusively to it, personally and individually liable for the face of the note.

Where signatures of individuals appearing immediately under the name of a corporation on an instrument, are preceded by the word ''By'' and followed by the words ''President'' and ''Secretary,'' respectively, such words indicate that the parties signed in a representative capacity, and the individuals so signing are not liable on the instrument, if they were duly authorized. Section 6780 (4694) Compiled General Laws of Florida, 1927; I. W. Phillips & Co. v. Hall, 99 Fla. 1206, 128 So. 635.

In an additional memorandum submitted to the court by Commissioner MATHEWS, he further elucidates his views by the following cogent observations:

"The parties here sought to be charged, have dealt in the name of the corporation and not individually."

Fundamentally the principle of law is that one professing to act as agent, unless he binds his principal is ordinarily held to bind himself.

In Phillips v. Hall, 99 Fla. 1206, 128 So. 635, an agent acting for and in the name of an unincorporated organization was held personally liable. In Duke v. Taylor, 37 Fla. 64, 19 So. 172, the foreign corporation had never been legally organized. There the officers were held personally liable.

Since the amendment of 1915, the failure of a foreign corporation to qualify, does not affect the validity of any contract with the corporation, but it cannot maintain action in this State until its qualifies. Section 6029, C. G. L.; Bank v. Jordan, 71 Fla. 566, 71 So. 760.

If incorporated and organized in the foreign State (thereby becoming a legal entity) it may transact business in Florida * * * provided its acts be not in contravention of our laws or of public policy. Duke v. Taylor, *supra*.

In Duke v. Taylor, it was also said (37 Fla. 72 text):

"Our general incorporating laws recognize the transaction of business by foreign corporations in this State and in the absence of express legislative assertion to the contrary, the courts of this State would be bound to recognize the comity existing among the states."

A foreign corporation may be sued and may defend suits brought against it in this State without qualifying to do business here. Brecht v. Bur-Ne Co., 91 Fla. 345, 108 So. 173.

It is to be noted that our statute penalizes the doing of business here without qualifying but does not make the contracts void. It would seem, if the agent in the name of his principal made a valid and binding contract, such

agent ought not to be held personally liable where the party with whom he is dealing is put on notice that he is dealing with a corporation and has knowledge of the fact that the contract is binding upon the corporation and that the corporation can be sued thereon. See Annotations 51 A. L. R. 376, with regard to personal liability of stockholders, officers, or agents for debt of foreign corporation doing business in the State; and Division 4 of the same note, page 385, with regard to liability of directors, officers and agents where corporation fails to comply with laws. The Florida cases are discussed in the first column ib. page 385.

It may be said from said note, I think, that the states generally by reason of comity and the close proximity of the states, recognize the validity of the corporation when fully incorporated in a sister state; that by the weight of authority, in the absence of statute making special provision for the liability of its officers, the officers and agents of a corporation who transact business in the name of a corporation are not personally liable for the contracts so entered into by reason of the corporation not having qualified to do business in the forum state.

It is to be noted that there are some authorities to the contrary and that by statutes in Colorado, North Dakota, Virginia and possibly one or two other states, the officers dealing in the name of the corporation are held liable as partners where the corporation has not qualified. We have no such statute in Florida.

Under the old corporation act in Florida, where the corporation had not been fully organized or the affidavit of 10% had not been filed, there was a special provision of the statute which provided that the incorporators in the absence of the 10% affidavit etc. were to be held liable as partners.

As stated, with the comity existing between the states, and their nearness to each other and in this age of rapid transportation; thus effectively bringing the states nearer

to each other, I do not believe the court should hold the officers personally liable, in a situation like the case at bar.

Corporations ordinarily are organized for convenience of handling business and to get away from personal liability. To hold the agents liable where the corporation is duly and legally organized as a legal entity and does business here without having qualified, would logically lead to a like decision holding its stockholders and directors liable on the presumed authorization of its corporate acts and thus the result would follow that individuals would be skeptical of, and slow to acquire and hold stock in, corporations, even though duly and legally organized and being a legal entity, lest the corporation might cross the state line and contract with regard to some matter of business for which they would be held personally liable.

For the reasons above pointed out, I think the pleas were good, and that the judgment should be affirmed.

TERRELL, J., concurs.

ELLIS, J., (Dissenting) : The petition for rehearing in this case should be denied not only because the petition violates the rule obtaining in this State controlling such petitions but the views of law expressed and argued in the petition as they apply to the case at bar are not sound. See Jones v. Fox, 23 Fla. 462, 2 South. Rep. 853; Hull v. Burr, 58 Fla. 475, 50 South. Rep. 768; Malsby v. Gamble, 61 Fla. 327, 54 South. Rep. 766; Stewart v. Preston, 80 Fla. 479, 86 South. Rep. 348; Payne v. Ivey, 83 Fla. 436, 93 South. Rep. 143; A. C. L. R. Co. v. Lakeland, 94 Fla. 347, 115 South. Rep. 669.

The petition consists of nothing but an argument in which counsel take issue with the court not only upon the principles of law announced but upon their proper application to the case at bar. The petition is merely a reargument of the case in advance of a permit from the court for such argument. Such a petition this Court has held to be violative of the rule and will be dismissed without

further consideration. Finlayson v. Lipscomb, 15 Fla. 558; Jones v. Fox, *supra;* Sauls v. Freeman, 24 Fla. 225, 4 South. Rep. 577.

The interesting but obvious argument of the dissenting judges in the case of DaCosta v. Dibble, 45 Fla. 225, 33 South. Rep. 466, is by no means convincing. Just what is meant by saying that the rule "is broad enough to require the court to grant a rehearing, when properly applied for, upon any ground, whether of law or fact, that would render the judgment erroneous" is not very clear. How it is possible to determine that an error of law has been committed without reconsidering the case or accepting the statement in the petition for a rehearing as sufficient the learned Justices did not explain.

The facetious remarks about the "divine attribute of infallibility" assumed to be claimed by those members of the court in that case who were not favorable to the granting of the petition were more surprising than logical. A decision of the appellate court as well as a trial court is presumed to be right. The decision is supposed to follow upon deliberate and mature consideration. A petition for rehearing is just what its name implies and nothing more: a request that the cause be again considered not upon the ground that in the opinion of the losing party the court has erred in applying a principle of law but upon the ground that it has omitted consideration of a fact or question of law possibly which if considered would lead to a different decision. The petition should set forth clearly what fact was omitted in the court's consideration of the cause or what principle of law it failed to notice which was applicable to the facts and pleadings. If the rule advocated by the dissenting judges in the case mentioned obtained there would be no end to rehearings because the losing party on each decision could with propriety say that as the court may not console itself by imagining that it possesses the divine attribute of infallibility its decision

on the first, second or third rehearing is no nearer infallibility than the original hearing, therefore the petition should be granted.

Certainly it needs no argument to convince even those who are not reasonably sure of the accuracy of their decisions and are not quite sure of their ability to give a reason for the faith within them, that an argument of the case in the petition is premature as being made without permission.

If the practice in such matters is to obtain in this State which the court apparently approves by the granting of the petition in this case it cannot with propriety and equal fairness to all litigants before this court ever deny with consistent adherence to the principle of impartiality any petition for a rehearing which rests upon the opinion of the losing party that the court has erred in applying the law or that its decision rests upon a fallacious opinion and argument.

The argument contained in the petition for a rehearing is neither applicable to the issues upon which the case was tried nor sound upon the questions of law which the petition supposes were involved in the cause. The original opinion points out that the action rested as the declaration alleged upon a promissory note executed by certain persons who assumed to act in a corporate capacity without having been clothed with corporate existence or authority in this State. The first plea was argumentative and tendered no issue. The note was either the note of the defendants or it was not their note. If it was sought to interpose the defense that it was not their obligation the plea should have so stated. The second plea was bad for the same reason. It was argumentative and presented no issuable fact constituting a defense to the declaration.

The corporation either had authority to transact business in this state or it did not have authority to do so and as the transaction was a business transaction in this State

the note was the corporation's note with authority in the corporation to transact business here or it was not, but the plea presented no such issue and the court so held.

The third and last plea as the opinion points out was merely an admission that the defendants executed the note while acting for a New York Corporation which transacted the business in this State and that it was not authorized to do so but it was its only business transaction in this State.

The petition for rehearing states that in the case of Branham, 35 Fla. 297, 17 South. Rep. 552, a corporation was not in existence. On the contrary the corporation was in existence and the opinion of the court expressly stated that it was organized and chartered under the laws of Tennessee. The opinion then states that "a corporation can have no legal existence out of the boundaries of the sovereignty by which it is created. That it exists only in contemplation of law, and by force of law; and where that law ceases to operate, the corporation can have no existence. It must dwell in the place of its creation, and can not migrate to another sovereignty."

Upon that principle, which is the law today in this and other jurisdictions, the court merely held that the persons assuming to act in a corporate capacity in a State where they have not been clothed with corporate existence and authority cannot be recognized as a legally constituted corporation "though they may have been duly incorporated in another State, and that such persons, in the State where they *assume* corporate capacity, will be treated as, and held to the responsibility of partners, both in courts of law and equity."

The majority opinion and the argument in the petition follow the moral, not legal, doctrine that as the transaction of business by the person assuming to act as a New York corporation was the *only* business transaction it had in this State its offense was a little one and therefore excusable. So far as the record shows to the contrary the Broad-

Albin Storage Company may have held a charter with a provision purporting to authorize it to transact business in Florida the statutes of this State to the contrary notwithstanding.

The case was tried upon the issue presented by the declaration that the defendants assumed to act as a corporation without being clothed with authority by the law of this State so to act. The pleas sought to avoid the liability of the defendants as partners by saying that they represented a corporation of New York State and acted for it. The court said the pleas were bad, constituted no defense. Neither the argument in the petition for rehearing nor the majority opinion shows the error of the trial court in holding the pleas to be bad.